## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

JEREMY SWEAT and
GINGER SWEAT,

                    Plaintiffs,

v.                                           CIVIL ACTION NO.   3:16-5252

STATE OF WEST VIRGINIA,
WEST VIRGINIA STATE POLICE,
SGT. S. T. HARPER, in his individual
and official capacity as a sergeant in the
West Virginia State Police,
WEST VIRGINIA STATE POLICE
UNKNOWN OFFICERS, in their
individual and official capacity as officers
in the West Virginia State Police,

                    Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Dismiss in Part (ECF No. 10). Plaintiffs filed the instant action on June 10, 2016 (ECF No. 1) alleging seven different counts against Defendants over the untimely death of their beloved dog, Willy Pete.[1]  Defendants have moved to dismiss many of these claims, either in whole or in part.   For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss in Part (ECF No. 10).

---

[1] Although Plaintiffs' complaint appears to have eight counts, the complaint mistakenly places Count Seven after Count Five, so only seven causes of action are alleged.   This opinion will address the counts as numbered in the complaint.

## I.      Background

This case involves a series of extremely unfortunate events that led to the death of Plaintiffs' dog, Willy Pete.   Plaintiffs Jeremy and Ginger Sweat live in Milton, West Virginia on a rural piece of property.   *Pls.' Compl.*, ECF No. 1, at ¶ 10.   On June 24, 2014, Mrs. Sweat noticed a heavy police presence on or near their property, including a helicopter overhead.   *Id.* at ¶¶ 29-30.   Plaintiffs later discovered that police were searching for a fugitive who had fled near their property.   *Id.* at ¶ 32.   Looking out the living room window, Mrs. Sweat observed men in military-type uniforms holding rifles and emerging from the woods near Plaintiffs' driveway.   *Id.* at ¶ 35.   With the men was a "large dark colored dog" – the K-9 unit's canine involved in the search.   *Id.*   One of Plaintiffs' dogs, Willy Pete, was lounging on the front porch near the door directly underneath the living room window.   *Id.* at ¶ 36.

According to the complaint, the canine with the police officers began to bark, and "its handler was struggling to control that dog."   *Id.* at ¶ 38.   Willy Pete stood up from his position and began to trot towards the men.   *Id.* at ¶ 39.   Plaintiffs allege that Willy Pete was not aggressive and had no history of violence.   *Id.* at ¶¶ 27-28.   One of the men, later identified as Sergeant S.T. Harper, pointed his gun towards the oncoming dog.   *Id.* at ¶ 40.   Mrs. Sweat allegedly yelled for the officer to lower his weapon, screaming "Don't Shoot My Dog!   He won't bite you!   Let me put him inside!"   *Id.* at ¶ 41.   However, the officer allegedly fired one shot that landed in the dirt in front of Willy Pete, scaring the dog to run back to the house towards Mrs. Sweat.   *Id.* at ¶¶ 43-45.   Mrs. Sweat claims three more shots were fired in Willy Pete's direction, putting the house and Mrs. Sweat in the line of fire.   *Id.* at ¶ 51.

Willy Pete ran towards the back of the house, and Mrs. Sweat went to the back door to check on him.   *Id.* at ¶ 55.   Mrs. Sweat saw her dog lying on the ground, struggling for breath,

and watched him die.   *Id.* at ¶ 56.   Mrs. Sweat struggled through her emotions to call Mr. Sweat to tell him about what just happened, and the police officers waited outside for him to return home. *Id.* at ¶¶ 61-65.   When asked why they shot Willy Pete, one of the police officers told Mrs. Sweat that they "couldn't let the dogs fight."   *Id.* at ¶ 63.   When Mr. Sweat arrived, he demanded to know who shot the dog.   *Id.* at ¶ 75.   In response, one of the police officers allegedly grabbed Mr. Sweat by the arm and said, "You had better shut your Goddamn mouth or you're going to get yourself into trouble."   *Id.* at ¶ 76.   Mr. Sweat and the police officers eventually dug a hole to bury Willy Pete in the yard.   *Id.* at ¶ 80.

Both Mr. and Mrs. Sweat gave statements to Sergeant Mills, a member of the West Virginia State Police force on the scene.   *Id.* at ¶¶ 82-85.   Plaintiffs' complaint includes details of emotional distress resulting from the traumatic experience, including visits with psychiatrists and therapist counselors as well as prescriptions for "psychotropic medications."   *Id.* at ¶¶ 95-101. Mrs. Sweat has been diagnosed with Posttraumatic Stress Disorder, depression, and generalized anxiety.   *Id.* at ¶ 96.   Mr. Sweat has also been diagnosed with an anxiety disorder.   *Id.* at ¶ 99.

Plaintiffs filed this suit to recover damages and to request injunctive relief against Defendants' policies that allow officers to kill domestic pets without due process and without exigent circumstances.   The complaint alleges seven causes of action, which will each be addressed according to the arguments brought in Defendants' Motion to Dismiss in Part: (1) Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983 against Defendant Harper and Unknown Officers in their individual capacities; (2) Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983 against the State of West Virginia and the West Virginia State Police (WVSP); (3) a negligent training, supervision, and retention claim against the WVSP; (4) an intentional infliction of emotional distress (IIED) claim against all Defendants; (5) a negligent

-3-

inflction of emotional distress (NIED) claim against all Defendants; (6) a negligence claim against all Defendants; and (7) a conversion claim against all Defendants.   For relief, Plaintiffs request compensatory damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## II.   Legal Standard

Federal Rule 8(a) requires a complaint to include "a short and plain statement of the claim … showing entitle[ment] to relief."   Fed. R. Civ. P. 8(a)(2).   To overcome a motion to dismiss under Federal Rule 12(b)(6), a complaint must also be plausible.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).   This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Id.* at 555 (internal quotations and citations omitted).   A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).   Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citation omitted).

Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level …."   *Twombly*, 550 U.S. at 555 (citations omitted).   If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court."   *Id.* at 558 (internal quotations and citations omitted).   Finally, "[a]lthough for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true

a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

### III.  Discussion

#### a.  Claims against Unknown Officers

Defendants challenge Plaintiffs' inclusion of Unknown Officers in the complaint as contrary to the Federal Rules of Civil Procedure.   Briefings by both parties focus on District Judge Joseph R. Goodwin's decision in *Price v. Marsh* to argue opposite positions.   *See Price v. Marsh*, Civ. No. 2:12-cv-05442, 2013 WL 5409811 (S.D.W. Va. Sept. 25, 2013).   Plaintiffs highlight Judge Goodwin's comment that "lawsuits against John Doe defendants are permitted where the 'true identity of an unnamed party can be discovered through discovery or through intervention by the court.'"  *Id.* at *5 (quoting *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982)).   Defendants focus on the following sentence, stating that "this determination and its subsequent reiteration by the Fourth Circuit … occurred in the era prior to *Twombly* and *Iqbal*."  *Id.*   Judge Goodwin goes on to say that "[i]f a judgment may not be entered against an unnamed party, by definition it is impossible for a plaintiff to state a claim against an unnamed party upon which relief can be granted."  *Id.*   This analysis ultimately led Judge Goodwin to dismiss Trooper John Doe from that action.

Although the cited analysis in both parties' briefs appears to suggest that no actions can survive against John Doe defendants, both Plaintiffs and Defendants failed to discuss the most important part of Judge Goodwin's analysis, occurring before any of the cited discussion.   The dismissal of Trooper John Doe importantly appears after Judge Goodwin discusses the plaintiff's motion to amend the complaint to substitute an actual defendant for the unnamed officer.   *Id.* at *2-3.   Judge Goodwin highlights the plaintiff's untimely amendment, citing the failure to request

information from the defendants in discovery to learn the trooper's name, the attempted alteration of the complaint three months before any motion to amend was filed, the six-month delay of filing a motion to amend after the time for amended pleadings in the scheduling order had passed, and the plaintiff's failure to request an extension to file an amended pleading.  *Id.* at *2.   Based on all of these damaging facts, Judge Goodwin held that the plaintiff "was not diligent in seeking leave to amend the complaint, and therefore the motion for leave to amend the complaint is **DENIED**." *Id.* at *3.   The complaint moving forward, therefore, contained allegations against Trooper Marsh, Trooper John Doe, Colonel Cr. Smithers, and the WVSP.   Facing these defendants as the final defendants allowed to be named in that action, Judge Goodwin proceeded with a determination *sua sponte* to dismiss Trooper John Doe.   In fact, the discussion on whether a John Doe defendant could exist begins with the statement that "*[b]ecause I am denying Mr. Price's request to amend the complaint,* I must determine what is to become of Defendant John Doe."  *Id.* (emphasis added).

The same factual circumstances that caused Judge Goodwin to deny the motion to amend the plaintiff's complaint in that case are not present in this case.   This case is still in the beginning stages with time for Plaintiffs to discover which officers were present with Defendant Harper on the day in question.   Plaintiffs address this in their response, stating that Defendants "certainly know who they are" and that the names will be learned in discovery.  *See Pls.' Mem. in Opp.*, ECF No. 18, at 2.   Other courts have similarly allowed plaintiffs to discover names of unnamed defendants in discovery and amend the complaint, even post-*Twombly* and post-*Iqbal*.  *See, e.g.*, *Cowart v. Dallas Cty. Jail*, 439 F. App'x 332, 333 (5th Cir. 2011) (holding that district court improperly dismissed claim when plaintiff could have discovered names of John Doe defendants in discovery).   Thus, the fact that Plaintiffs failed to name the unknown officers in the complaint

will not require dismissal.   This Court allows John Doe defendants if the names can be found in discovery and complaints are timely amended.

Defendants also allege improper service as to Defendants Unknown Officers because the service window from the date of the complaint has passed.   *See Defs.' Reply*, ECF No. 22, at 3. Federal Rule 4(m) requires that a plaintiff serve the defendant within 120 days after the complaint is filed, otherwise face dismissal without prejudice.   Fed. R. Civ. P. 4(m) (2015).   A district court must either dismiss the case without prejudice for failure of service or "order that service be made within a specified time.   But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."   *Id.*; *see also Hicks v. Janiszewski*, Civ. No. 5:13CV140, 2014 WL 2778731 (N.D.W. Va. June 19, 2014) (granting 90-day extension to conduct service on then-unknown defendants).

However, even if the Court wanted to extend Plaintiffs' deadline to serve the Unknown Officers, the Court is prevented from doing so due to the applicable statute of limitations. Although neither party addressed this concern, it is clear that Plaintiffs' claims against the Unknown Officers will be time barred because the statute of limitations has run.   Section 1983 claims do not have a corresponding statute of limitations, but the Supreme Court has specified that the statute of limitations for § 1983 claims "is that which the State provides for personal-injury torts."   *Wallace v. Kato*, 549 U.S. 1091, 1094 (2007); *see also Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1161 (4th Cir. 1991).   "[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."   *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).   In West Virginia, the applicable statute of limitations for residual personal injury actions is set at two years. *See* W. Va. Code §55-2-12(b); *see also Bell ex rel. Bell v. Bd. of Educ. of Cty. of Fayette*, 290 F.

Supp. 2d 701, 709 (S.D.W. Va. 2003).   A court must also determine the date that starts the statute of limitations time period.   In federal courts, "the time of accrual of a civil rights action is a question of federal law."   *Nat'l Advert.*, 947 F.2d at 1162 (citations omitted).   For a § 1983 claim, the "cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice … to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim."   *Nasim v. Warden, Maryland House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995).

Moreover, an amended pleading to replace the name of an unknown party with an actual party does not toll the statute of limitations.   *See Bruce v. Smith*, 581 F. Supp. 902, 905 (W.D. Va. 1984) ("Naming unknown, fictitious, or 'John Doe' defendants in a complaint does not toll the statute of limitations until such time as the names of these parties can be secured.").   Under the Federal Rules, an amended party can relate back to the original complaint, effectively tolling the statute of limitations, under certain conditions.   Relation back for parties is permitted by Rule 15(c) if the added party "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, *but for mistake* concerning the proper party's identity."   Fed. R. Civ. P. 15(c)(1)(C) (emphasis added).   The Fourth Circuit has determined that a party can make a "mistake due to a lack of knowledge" or a "mistake due to a misnomer."   *Lockler v. Bergman & Beving AB*, 457 F.3d 363, 366 (4th Cir. 2006).   However, the meaning of mistake in Rule 15(c) does not embrace a mistake for lack of knowledge.   *Id.*   The court reasons that allowing for relation back in such circumstance "would produce a paradoxical result wherein a plaintiff with no knowledge of the proper defendant could file a timely complaint naming any entity as a defendant and then amend the complaint to add the proper defendant after the statute of limitations had run."   *Id.* at 367.   Circuits around the country have likewise determined that naming John

-8-

Doe defendants does not constitute a mistake within the meaning of Rule 15(c).   *See id.* (listing cases).   Therefore, if a plaintiff is allowed to amend the complaint to name the proper party in the place of an unknown entity, the new party does not relate back to the date of the original complaint and must satisfy the applicable statute of limitations.   *See Wright v. Officer BJ Sawyer and Officer 2 Unknown*, C/A No. 4:15-02442-BHH-KDW, 2016 WL 3633445, at *5 (D.S.C. June 15, 2016) ("Plaintiff's original complaint was filed only one day before the statute of limitations ran.   It is unfortunate that the plaintiff left himself so slender a margin for error.   However, that was his decision, and it was not affected by the conduct of the Defendant.") (internal quotation marks and citation omitted)).

Here, all of Plaintiffs' claims revolve around the untimely death of their dog, Willy Pete, on June 24, 2014.   *See Pls.' Compl.*, ECF No. 1, at ¶ 16.   A two-year statute of limitations causes the time to expire on June 24, 2016 because Plaintiffs were aware of the arising claim as soon as Defendants killed their dog.   Plaintiffs filed the complaint on June 10, 2016, a mere two weeks before the statute of limitations ran out.   As the statute of limitations does not toll when amending a complaint to replace an unnamed defendant, any amendment here would be futile.   Plaintiffs only had two weeks to name the Unknown Officers before the statute of limitations expired. Therefore, the statute of limitations on Plaintiffs' claims has run on the Unknown Officers and any amendment of parties will not relate back to the original complaint.   The Court must **DISMISS** the Unknown Officers as defendants from this action.

### b.  Claims against the WVSP

Plaintiffs' complaint specifies various claims against the WVSP that are not actionable as they are brought against both the State and the WVSP.   Plaintiffs alleged violations against the WVSP and the State under Count II for a 42 U.S.C. § 1983 claim, Count IV for IIED, Count V for

NIED, Count VII for negligence, and Count VIII for conversion.   *See Pls.' Compl.*, ECF No. 1. The complaint also attempts to frame the WVSP as a "political subdivision of the State of West Virginia" to make it "amenable to suit … in its own name."   *Id.* at ¶ 11.   However, the WVSP serves as an agency of the State, and thus is not a suable entity separate from the State of West Virginia.   *See* W. Va. Code § 15-2-2 (Department of Public Safety continued as the WVSP); *see also Krein v. West Virginia State Police*, Civ. No. 2:11-cv-00962, 2012 WL 2470015, at *6 (S.D.W. Va. June 27, 2012).   Plaintiffs' stipulated that the WVSP is an agency of the State in its Memorandum in Opposition.   *Pls.' Mem. in Opp.*, ECF No. 18, at 2.   In so doing, Plaintiffs agreed to dismiss any claim against the WVSP to the extent it serves as an agency to the State.

Therefore, the WVSP shall be **DISMISSED** as a defendant to this action for counts II, IV, V, VII, and VIII.

### c.   Constitutional Claims under 42 U.S.C. § 1983 against the State

Count II in the complaint alleges a 42 U.S.C. § 1983 claim against the State and the WVSP. The claim requests only injunctive and declaratory relief, a limitation that Plaintiffs argue saves the claim from dismissal.   *See Pls.' Mem. in Opp.*, ECF No. 18, at 3 ("declaratory and injunctive relief is viable under §1983").   However, the Court agrees with Defendants' argument that highlights the United States Supreme Court's previous rulings that a state cannot be sued under § 1983.

Generally, the Eleventh Amendment bars a citizen from bringing a civil suit against the state that would require the state to pay out of its own coffers.   *See Ex parte Young*, 209 U.S. 123, 161 (1908).   *Ex parte Young* provides a limited exception for when citizens sue the state through one of its officers for injunctive or declaratory relief.   *Id.*   This exception, though, does not mean that a citizen can sue for declaratory or injunctive relief against the state under any statute.

"Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 166 n.14 (1985).   Thus, the federal statute that a plaintiff sues under must explicitly provide for suit against a state or the state must waive its immunity by engaging in the litigation process.

Here, Plaintiffs bring Count II under 42 U.S.C. § 1983.   This statute imputes liability to "every person" who violates a constitutional right.   42 U.S.C. § 1983.   The Supreme Court held in *Will v. Michigan Department of State Police*, that persons under § 1983 do not include the state, an agency of the state, or a state official acting in official capacity.   491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").   Therefore, Plaintiffs' claims brought under § 1983 cannot be maintained against any state, any agency of the state, or an official acting in official capacity even if Plaintiffs only request injunctive or declaratory relief.   The Court cannot provide the requested injunctive relief, even if violations were proven, because the State of West Virginia is not considered a person under § 1983. Therefore, as the WVSP must be dismissed from this claim as an agency of the State, so must the State itself.   *See Krein*, 2012 WL 2470015, at *6.   As Plaintiffs request injunctive relief in Count II only against the State and the WVSP, Count II is hereby **DISMISSED** in its entirety.[2]

### d.  Negligent Training, Supervision, and Retention

Plaintiffs bring a negligent training, supervision, and retention allegation in Count III

---

[2] Defendants suggest in their Reply that equitable relief can be maintained against the individual officers in their official capacities, and Plaintiffs accurately state that a state officer can be sued for injunctive relief.   *See Defs.' Reply*, ECF No. 22, at 3; *Pls.' Mem. in Opp.*, ECF No. 18, at 3.   However, the complaint does not frame Count II as applying to the individual officers at all.   *See Pls.' Compl.*, ECF No. 1, at ¶¶ 146-49.   The allegations contained therein pertain only to the WVSP and the State.

against the WVSP.   As the State is also not alleged as a defendant in this cause of action, the Court

will consider the allegations asserted against the WVSP.[3]

West Virginia recognizes a negligent retention claim and treats claims for negligent

supervision and training under traditional principles of tort law.   *See Taylor v. Cabell Huntington*

*Hosp. Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000) (training and supervision); *McCormick v. West*

*Virginia Dep't of Pub. Safety*, 503 S.E.2d 502, 506 (W. Va. 1998) (retention).   However, the State

of West Virginia and its agencies also enjoy sovereign immunity as explained in Section 35, Article

VI of the West Virginia Constitution.   *See Hesse v. State Soil Conservation Comm.*, 168 S.E.2d

293, 296 (W. Va. 1969).   Immunity will not apply to the state or its agency if "liability accruing

from alleged negligent acts by the State is covered by the limits of the State's liability insurance

coverage and not state funds."   *Parkulo v. West Virginia Bd. of Prob. & Parole*, 483 S.E.2d 507,

514 (W. Va. 1996).   "Where liability insurance is present, the reasons for immunity completely

disappear."   *Clark v. Dunn*, 465 S.E.2d 374, 378 (W. Va. 1995) (internal quotation marks and

citation omitted).   The plaintiff would seek damages from the insurance contract and be limited

to the extent of insurance coverage provided.   *See Krein*, 2012 WL 2470015, at *8 (allowing

negligent training claim against WVSP to continue when state not also sued because insurance

limitations were asserted to eliminate sovereign immunity bar).

However, Plaintiffs here have failed to allege any such insurance coverage that would

---

[3] In Plaintiffs' memorandum, Plaintiffs state under the heading "Viable State Claims Against Defendants" that they have alleged the claim for negligent training, supervision, and retention against "the individual West Virginia State Troopers regarding the unconstitutional policy that was utilized …."   *Pls.' Mem. in Opp.*, ECF No. 18, at 5.   However, the complaint specifies allegations only toward the WVSP, stating that the WVSP had a duty, that the WVSP breached the duty by not revisiting its policy, that the WVSP is liable for the officers' conduct, and that Plaintiffs suffered as a result.   *Pls.' Compl.*, ECF No. 1, at ¶¶ 146-49.   Taking the complaint's allegations as true, the Court can construe the claim to include only the WVSP and not the individual officers as Plaintiffs argue in the memorandum.

apply in the instant case.   Although Plaintiffs assert that "there is an existence of an insurance contract that waives the defense of qualified immunity" in their Memorandum in Opposition, this bare assertion does not add to the complaint.   *See Pls.' Mem. in Opp.*, ECF No. 18, at 6.   In a case before Judge Goodwin of this district, Judge Goodwin specified that "a plaintiff can only state a plausible claim against a state department if the claim seeks relief up to and under the limits of the state's insurance policy."   *B.E. v. Mount Hope High Sch.*, No. 2:11-CV-00679, 2012 WL 3580190, at *4 (S.D.W. Va. Aug. 17, 2012).   Because the plaintiff in that case failed to allege in the complaint the limitation of damages to the insurance policy, the allegations were dismissed. *Id.*; *see also Jarvis v. West Virginia State Police*, 711 S.E.2d 542, 552 (W. Va. 2010) (dismissing WVSP for lack of insurance coverage assertion).   Plaintiffs here are faced with the same situation in that they failed to allege an insurance policy that could waive immunity for the State or the WVSP.   Thus, Count III against the WVSP must be **DISMISSED**.

### e.   NIED Claim

Plaintiff's Count V claim is for common law negligent infliction of emotional distress against each of Defendants.   *See Pls.' Compl.*, ECF No. 1, at ¶¶ 160-68.   Specifically, Plaintiffs allege that Mrs. Sweat and Plaintiffs' children "were in the zone of danger of physical injury created by these Defendants."   *Id.* at ¶ 162.   Defendants argue in their Motion to Dismiss in Part that Plaintiffs have not satisfied the limited circumstances in which West Virginia recognizes an NIED claim.   *See Defs.' Mem. in Supp.*, ECF No. 11, at 10.   Plaintiffs respond by advocating for the use of equitable principles to allow an NIED claim to continue because West Virginia courts have recognized damages for emotional distress when defendant actions "rise to the level of outrage."   *Pls.' Mem. in Opp.*, ECF No. 18, at 6 (internal quotation marks omitted).

In West Virginia, damages for emotional distress are rarely given when claims allege that a defendant acted negligently and did not cause physical injury.  *See Harless v. First Nat'l Bank in Fairmont*, 289 S.E.2d 692, 702 (W. Va. 1982).   In *Heldreth v. Marrs*, the Supreme Court of Appeals of West Virginia analyzed the elements required for an NIED claim: (1) "that a close marital or familial relationship exist[s] between the plaintiff and the victim"; (2) "that a plaintiff … is present at the scene of the injury-producing event at the time it occurs and is aware that it is causing injury to the victim"; (3) "that the emotional trauma alleged by a plaintiff must be the direct result of either the critical injury to or death of a person closely related to the plaintiff"; and (4) that the emotional distress experienced was serious and "reasonably could have been expected to befall the ordinarily reasonable person".  425 S.E.2d 157, 163-68 (W. Va. 1992).   Physical injury is no longer a requirement to prove NIED, but the cause of action is limited still to "conduct that unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her physical safety."  *Brown v. City of Fairmont*, 655 S.E.2d 563, 569 (W. Va. 2007).   Even with the limited expansion of the cause of action, NIED remains a "narrowly drawn" claim.  *Cruse v. Frabrizio*, Civ. No. 3:13-18768, 2014 WL 3045412, at *12 (S.D.W. Va. July 2, 2014).

The Court agrees with Defendants' analysis that a plaintiff must witness a person—with either a marital or close familial relationship—experience serious injury or death to allege a successful NIED bystander claim that survives a motion to dismiss.   Unfortunately, West Virginia does not recognize an NIED claim for emotional distress from witnessing a beloved pet die because the test requires a "person" of close relationship.  *See Peters v. Small*, 413 F. Supp. 2d 760, 761 (S.D.W. Va. 2006) (prohibiting evidence for emotional distress because plaintiff "did not witness the death or serious injury of a person closely related to him" and could not sustain an NIED claim).   Although there are other recognized limited exceptions when the plaintiff is not

-14-

considered a bystander, including exposure to a disease and the "dead body exception," neither of these exceptions are applicable to the instant case. *See Mays v. Marshall Univ. Bd. of Governors*, No. 14-0788, 2015 WL 6181508, *3 (W. Va. Oct. 20, 2015) (citing *Marlin v. Bill Rich Constr., Inc.*, 482 S.E.2d 620 (1996) and *Ricotilli v. Summersville Mem'l Hosp.*, 425 S.E.2d 629 (1992)). Mrs. Sweat alleges that she and her children were within the zone of danger of the bullets that were shot toward Willy Pete and reasonably feared for her life, but this alone does not satisfy the narrowly drawn NIED claim in West Virginia. *See Pls.' Compl.*, ECF No. 1, at ¶ 164. The Court is further convinced by other states denying damages under NIED for witnessing the death of a pet. *See Harabes v. Barkery, Inc.*, 791 A.2d 1142, 1144 (N.J. Sup. Ct. 2001) (citing cases from Wisconsin, Nebraska, Iowa, Alaska, Michigan, Texas, New York, Georgia, and Minnesota). If West Virginia wishes to recognize a cause of action for witnessing a pet's death, that should be done in the legislature and not through an expansion of a common law tort.

Moreover, in Plaintiffs' Memorandum in Opposition, Plaintiffs misconstrue the zone of danger element as required under the claim for outrage, or otherwise known as IIED, rather than argue why witnessing a pet's death should fall under NIED. *See Pls.' Mem. in Opp.*, ECF No. 18, at 6. Defendants have not challenged Plaintiffs' IIED claim, and that claim has adequate allegations to support it at this time. The Court, thus, will **DISMISS** Count V for the NIED claim.[4]

### f. Negligence Claim

In Count VII, Plaintiffs allege common law negligence against all of Defendants, citing a duty of care to respect the life of Plaintiffs' dog and to use "alternative, non-lethal measures to

---

[4] The NIED claim may also fail for other reasons stated under the negligence sections of this opinion. The Court refrains from engaging in further discussions since NIED is narrowly drawn in West Virginia, and the facts presented here do not support such a claim.

handle domestic animal situations."   *Pls.' Compl.*, ECF No. 1, at ¶ 170.   Plaintiffs cannot

maintain a negligence action against the Unknown Officers because they have been dismissed

already.   West Virginia further bars suit against a state or state agency when qualified or sovereign

immunity applies.   *See Clark*, 465 S.E.2d at 380.   As Defendants acknowledge, this immunity

only applies if there is no applicable insurance contract in place that a plaintiff could draw the

damages award from.   *See Defs.' Mem. in Supp.*, ECF No. 11, at 9.

As explained in the Count III discussion, Plaintiffs have failed to allege any applicable

insurance coverage to circumvent the State's and the WVSP's sovereign immunity protection.

For the same reasons that the Court dismissed Count III against the WVSP, the Court must also

dismiss Count VII as to the State and the WVSP.

Thus, the negligence claim can only be asserted against Defendant Harper, and the

complaint specifies that the allegation is against all of Defendants acting in their official capacity.

*See Pls.' Compl*, ECF No. 1, at ¶¶ 170-73.   Suits against an officer in his official capacity are

effectively suits against the state and must be dismissed if seeking damages.   *See Pennhurst*, 465

U.S. at 101-02; *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 n.55 (1978)

("official-capacity suits generally represent only another way of pleading an action against an

entity of which an officer is an agent").   Further, qualified immunity protects individual officers

from civil suits even if brought in their individual capacity, including negligence, when acting

within the scope of their employment.   *See Jarvis*, 711 S.E.2d at 552 (holding that state police

officers "have qualified immunity from claims of simple negligence").

In *Clark v. Dunn*, the Supreme Court of Appeals of West Virginia affirmed the trial court's

grant of summary judgment in favor of an officer charged with negligence.   465 S.E.2d at 374

(negligence alleged when officer grabbed firearm resting on hunter's lap and it discharged).   The

trial court stated that a public official "is entitled to qualified immunity for his actions in performing discretionary acts.   The doctrine protects all government officials who exercise their discretion in fulfilling their duties ….   *Negligence simply is not sufficient for liability to be imposed under this standard.*"   *Id.* at 376 (emphasis added).   In affirming, the court stated that "the doctrine of qualified … immunity bars a claim of mere negligence against … Officer Dunn, an officer of that department acting within the scope of his employment, with respect to the discretionary judgments, decisions, and actions … which are the subject of the complaint in this action."   *Id.* at 380-81.

This complaint is similar to those in *Clark* and *Jarvis* in that it only alleges actions within the scope of Defendant's Harper's employment and within his discretionary judgments at the time. The doctrine of qualified immunity, thus, protects Defendant Harper from suit and bars a claim for mere negligence against him.   Therefore, the Court must dismiss Count VII alleging negligence Defendant Harper.   As all Defendants have been dismissed, Count VII must be **DISMISSED** in its entirety.

### g.   Remaining Claims

Defendants' motion does not address Count I brought against Defendant Harper in his individual capacity, Count IV, or Count VIII.   The Court has already addressed why Plaintiffs cannot maintain an action for damages against the Unknown Officers, the State, or the WVSP as a state agency.   As Count IV and Count VIII are addressed against all Defendants, the Court must dismiss those counts as against the Unknown Officers, the State, and the WVSP.   Therefore, the remaining claims in this action consist of: Count I, Count IV, and Count VIII, all against Defendant Harper in his individual capacity.

## IV.    Conclusion

In summary, the following claims survive this motion to dismiss: constitutional violations in Count I brought under 42 U.S.C. § 1983 against Defendant Harper in his individual capacity; the IIED claim in Count IV against Defendant Harper in his individual capacity; and the conversion claim in Count VIII against Defendant Harper in his individual capacity.   For reasons explained above, the WVSP, the State of West Virginia, and the Unknown Officers are **DISMISSED** as defendants in this action.   Counts II, III, V, and VII are **DISMISSED** in their entirety.   Therefore, the Court **GRANTS** Defendants' Motion to Dismiss in Part (ECF No. 10).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        December 22, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE